1

2

3

4

5

6

7

> FILED - EASTERN DIVISION
> CLERK, U.S. DISTRICT COURT
>
> FEB 2 5 2009
>
> CENTRAL DISTRICT OF CALIFORNIA
> BY                              DEPUTY

8

9

10

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

November 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | ED CR 08-128(B)-SGL |
| Plaintiff, | S E C O N D |
| | S U P E R S E D I N G |
| v. | I N D I C T M E N T |
| CONSTANTINE PETER KALLAS,<br> a.k.a. "Dean,"<br> a.k.a. "Dino," and<br>MARIA GABRIELA KALLAS,<br> a.k.a. "Nene," | [18 U.S.C. § 371: Conspiracy;<br>18 U.S.C. § 201(b)(2): Bribery;<br>18 U.S.C. § 1505: Obstruction<br>of Justice; 18 U.S.C. § 1546:<br>Fraud and Misuse of Entry<br>Documents; 18 U.S.C. |
| Defendants. | § 1028A(a)(1): Aggravated<br>Identity Theft; 18 U.S.C.<br>§ 1001(a)(2): False Statements;<br>18 U.S.C. § 1920: False<br>Statement to Obtain Federal<br>Employees' Compensation; 18<br>U.S.C. § 1956(h): Conspiracy to<br>Commit Money Laundering; 18<br>U.S.C. § 1956(a)(1)(B)(i):<br>Money Laundering; 18 U.S.C.<br>§ 1957: Money Laundering<br>Involving Transactions Greater<br>than $10,000; 26 U.S.C. § 7201:<br>Tax Evasion; 18 U.S.C.<br>§ 981(a)(1)(C), 21 U.S.C.<br>§ 853, 28 U.S.C. § 2461(c):<br>Criminal Forfeiture; 18 U.S.C.<br>§ 982(a)(1): Criminal<br>Forfeiture; 18 U.S.C. § 2:<br>Aiding and Abetting and Causing<br>an Act to Be Done] |

ROA:roa

The Grand Jury charges:

**INTRODUCTORY ALLEGATIONS**

At all times relevant to this Second Superseding Indictment:

I.   **DEFINITIONS**

1.   The United States Citizenship and Immigration Service ("USCIS") was a branch of the United States Department of Homeland Security ("DHS"), a department under the executive branch of the United States government.

2.   The United States Immigration and Customs Enforcement ("ICE") was a branch within DHS.

3.   The Office of Chief Counsel ("OCC") was a department of the Office of Principal Legal Advisor within ICE.  The OCC was comprised of attorneys who argued on behalf of the government in civil administrative removal hearings and provided legal advice to other components of ICE, such as the Office of Investigations.  Attorneys working in OCC held the position of Assistant Chief Counsel.

4.   The Office of Deportation and Removal Operations ("DRO") was a division of ICE.

5.   The United States Department of Labor ("DOL") was a department under the executive branch of the United States government.

6.   The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury, responsible for administering and enforcing the tax laws of the United States.

7.   The term "alien" as used in this Second Superseding Indictment refers to an individual who was not a citizen or national of the United States.

8.   The term "official A-File" as used in this Second Superseding Indictment refers to an alien registration file prepared

and maintained by ICE, which is a file created for: (1) any alien or foreign national who files or has any type of immigration petition, form, or application filed with USCIS; or (2) any undocumented alien found in the United States who is subsequently processed by immigration authorities.  Each official A-File has a unique registration identification number known as an "A-number."  USCIS acts as the custodian of official A-Files, which are the property of the United States government.  Official A-files are only authorized for use in official business of the United States.

9. The term "Labor Certification" as used in this Second Superseding Indictment is a certification issued by the Secretary of DOL and includes attestations by employers in the United States as to United States workers available to take on an employment position sought by foreigners, and the consequence of the foreigners' work on the wages and working conditions of United States workers who hold a similar job position.

10.  The term "Executive Office for Immigration Review" ("EOIR") as used in this Second Superseding Indictment refers to the agency of the United States Department of Justice that is responsible for the Immigration Courts.

11.  The term "immigration removal proceeding" as used in this Second Superseding Indictment refers to an Immigration Court proceeding begun on or after April 1, 1997, to determine whether a person can be admitted to the United States or removed from the United States.

12.  The term "removal," also commonly known as "deportation," as used in this Second Superseding Indictment refers to the legal act of

3

1  removing an alien from the United States after the alien has been

2  found in immigration removal proceedings to be removable.

3      13.  "Immigration Judge" as used in this Second Superseding

4  Indictment refers to a judicial official who presides over proceedings

5  in Immigration Court.  Among other functions, Immigration Judges are

6  responsible for conducting formal court proceedings to determine

7  whether an individual from a foreign country (an alien) should be

8  allowed to enter or remain in the United States or should be removed.

9      14.  The term "Notice to Appear" ("NTA"), also known as a Form I-

10  862, as used in this Second Superseding Indictment refers to the

11  document that orders an alien to appear before an Immigration Judge in

12  removal proceedings and states why the DHS believes the alien should

13  be removed from the United States.

14      15.  The term "Adjustment of Status" as used in this Second

15  Superseding Indictment refers to a process that permits aliens who are

16  already in the United States to apply for immigrant status.

17  II.  **THE DEFENDANTS**

18      16.  At all times relevant to this Second Superseding Indictment,

19  defendant CONSTANTINE PETER KALLAS, also known as ("aka") "Dino" or

20  "Dean" ("C. KALLAS"), was a public official, namely an Assistant Chief

21  Counsel with OCC within ICE, a branch of DHS.  During part of his

22  tenure as an Assistant Chief Counsel, defendant C. KALLAS also was

23  designated as the Federal Bureau of Investigation ("F.B.I.") liaison.

24      17.  Defendant MARIA GABRIELA KALLAS, aka "Nene" ("M. KALLAS"),

25  was defendant C. KALLAS's wife.

26      18.  Defendants C. KALLAS and M. KALLAS are collectively referred

27  to as defendants in this Second Superseding Indictment.

28

4

## III. BUSINESS ENTITIES

### A.   Botno Inc.

19.   Botno Inc. was incorporated in the state of Illinois on or about March 28, 1995, with incorporation filings that listed its office location in Stockton, Illinois 61085.  On or about August 11, 2005, defendants assumed control of Botno Inc., and defendant M. KALLAS became the president of Botno Inc.  Defendants utilized Botno Inc. as a purported prospective employer for aliens seeking work authorization and permanent residency status within the United States, and thus filed and caused to be filed employment-based immigration petitions and supporting documents on behalf of the aliens.

20.   The purported worksite location of Botno Inc. listed in the immigration petitions, where the prospective alien employees would purportedly work for Botno Inc., was in fact not an office or work-site location, but rather, the one-bedroom apartment of A.F., defendant M. KALLAS's mother, located in Rancho Cucamonga, California.

### B.   Mississippi Valley Consulting Co. Inc.

21.   Mississippi Valley Consulting Co. Inc. ("MVCI") was incorporated in the state of Illinois on or about February 16, 2000. Defendants assumed control of MVCI in 2006.  After assuming control of MVCI, corporate records and filings reflected defendant M. KALLAS's mother, A.F., as the president of MVCI.  In or about 2007, defendants changed the president of MVCI from A.F. to defendant M. KALLAS. Defendants utilized MVCI as a purported prospective employer for aliens seeking work authorization and permanent residency status within the United States, and thus filed and caused to be filed employment-based immigration petitions and supporting documents on behalf of the aliens.

5

22.   The purported worksite location of MVCI listed in the immigration petitions, where the prospective alien employees were to work for MVCI, was in fact not an office or work-site location, but rather the two-bedroom apartment of alien J.G., son of F.G., defendants' housekeeper, located in Rancho Cucamonga.

C.   **Sweet Life Inc.**

23.   Sweet Life, Inc. ("Sweet Life") was incorporated in the State of Nevada, on or about October 25, 2000.   Incorporation filings with the Nevada Secretary of State indicate that the President, Director, Treasurer, and Secretary of Sweet Life was defendant M. KALLAS, with an address of P.O. Box 1275, Rancho Cucamonga, California 91701, and in Alta Loma, California, defendants' residence. The ETA-750 petitions listed the employer address for Sweet Life as P.O. Box 1257, Rancho Cucamonga, California. Defendants utilized Sweet Life as a purported prospective employer for aliens seeking work authorization and permanent residency status within the United States, and thus filed, and caused to be filed, employment-based immigration petitions and supporting documents on behalf of the aliens.

24.   The purported office location where the prospective alien employees were to work for Sweet Life was in fact not an office or work-site location but either defendants' residence in Alta Loma, California, or A.F.'s one-bedroom apartment in Rancho Cucamonga.

IV.   **PROCEDURES FOR OBTAINING EMPLOYMENT-BASED IMMIGRATION STATUS**

25.   Aliens already present in the United States, either illegally or legally through a B-2 visitor visa ("visitor visa"), could not be employed legally in the United States.   A visitor visa was valid for up to six months and could be extended for an additional

1   six-month period by filing an Application to Change/Extend

2   Nonimmigrant Status, Form I-539 ("I-539").

3   26. Employers were permitted to employ aliens on a temporary

4   basis to fill a "specialty occupation," which under DHS regulations

5   was a job that generally required a college degree or substantial

6   prior experience that could be equated to a college degree. An

7   employer was required to pay an alien hired to work in a specialty

8   occupation within five percent of the prevailing wage rate set by DOL

9   for that specialty occupation in the geographic location.

10   27. The following procedures existed for employers seeking to

11   employ an alien in the United States on a permanent basis:

12       a. The employer would file with DOL an "Application for

13   Permanent Employment Certification," also known as an "ETA-9089" or

14   "PERM Form," which set forth, among other things, the name of the

15   employer, job title, rate of pay, qualifications of the alien, and the

16   alien's work experience. The ETA-9089 was to be filed with DOL online

17   via the internet and came into effect in or about March 2005.

18       b. Prior to March 2005, the employer would file with DOL

19   an "Application For Alien Employment Certification," also known as an

20   "ETA-750," which set forth, among other items, the name of the

21   employer, job title, rate of pay, qualifications of the alien, and the

22   alien's work experience.

23       c. Once the employer filed the ETA-750 or ETA-9089

24   petition with DOL, DOL would evaluate the petition, and certify the

25   petition if it met the requirements of DOL.

26       d. After certifying the ETA-750 or ETA-9089, the employer

27   would file with USCIS a Form I-140, Immigration Petition for Alien

28   Worker ("I-140 petition"). Along with the I-140 petition, the

7

1  employer would submit the certified ETA-750 or ETA-9089 to USCIS, with
2  other supporting documentation regarding the employer and sponsored
3  alien such as copies of passports, diplomas, income tax returns, birth
4  certificates, corporate documents, and employment offer letters.

5          e.   If after submitting the petitions and supporting
6  documentation to USCIS, additional supporting documentation was needed
7  by USCIS, USCIS would send a letter to the employer or the alien
8  asking the employer or sponsored alien for the missing or additional
9  documentation, usually entitled a "Request for Evidence" letter.

10          f.   If the USCIS approved the I-140 petition, the alien
11  could apply for a permanent resident alien status ("green-card") by
12  filing with USCIS an Adjustment of Status Petition, Form I-485 ("I-485
13  petition").

14          g.   If USCIS granted permanent resident status to an alien,
15  the alien was permitted to live and work in the United States
16  indefinitely.

17  **V.   PROCEDURES FOR REMOVING ALIENS FROM THE UNITED STATES**

18          28.   If ICE located an alien in the United States who was in
19  violation of the immigration laws, and absent a waiver of voluntary
20  removal by Canadian or Mexican nationals, the alien would be served
21  with a NTA.  A copy of the NTA was placed in the alien's official A-
22  File, the original NTA was forwarded to EOIR, and the official A-File
23  was forwarded to the OCC for the pending immigration action.  EOIR in
24  turn notified the alien of the location, date, and time of the first
25  immigration removal proceeding hearing.

26          29.   The removal proceedings consisted of various hearings held
27  in Immigration Court before an Immigration Judge.  At the end of the
28  proceedings, the Immigration Judge determined the immigration status

8

of the alien and issued an order to remove the alien from the United States or to grant the alien immigration relief in allowing the alien to remain the United States.   A copy of the Immigration Judge's order was placed in the alien's official A-File.   If an Immigration Judge ordered the removal of an alien not already in custody, the alien's official A-File was forwarded to the DRO to locate and remove the alien, based on the biographical information and removal order in the official A-File.

## VI.   INCORPORATION BY REFERENCE

30.   These introductory allegations are hereby incorporated by reference into each count of this Second Superseding Indictment.

**COUNT ONE**

[18 U.S.C. § 371]

[Conspiracy]

I.   **OBJECTS OF THE CONSPIRACY**

31.   Beginning on a date unknown to the Grand Jury, but at least from in or about October 2003, and continuing through on or about June 26, 2008, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offenses against the United States:

a.   To knowingly accept, demand, seek, receive, and agree to receive bribes from aliens by soliciting, offering, and promising to obtain immigration benefits for aliens residing within or outside of the United States, by representing to those aliens that defendant C. KALLAS would perform immigration related work on behalf of the aliens in his position as an United States Immigration official, in violation of Title 18, United States Code, Section 201(b)(2).

b.   To knowingly subscribe as true, present, and cause to be presented, to DOL and USCIS, applications, petitions, and documents required by the immigration laws and regulations prescribed thereunder that contained false and fraudulent statements with respect to material facts, in violation of Title 18, United States Code, Sections 1001 and 1546(a); and

c.   To defraud the United States, that is, to act with the purpose of impairing, obstructing, and defeating the lawful functions of DOL and USCIS through deceit, craft, trickery, and dishonest means.

10

## II.  **MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED**

The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

32.   Defendants would assume control of existing companies Sweet Life, Botno Inc., and MVCI.

33.   Defendants would meet with aliens who sought to obtain work authorization, permanent residency status in the United States, or other forms of immigration-related benefits, for the purpose of soliciting, offering, and promising to obtain immigration benefits for the aliens.

34.   Defendants would advise some aliens that defendant C. KALLAS was a United States Immigration official.  Defendants would assure these aliens that defendant C. KALLAS, as an Immigration official, would successfully obtain work authorization, permanent residency status, and other immigration-related benefits for the aliens.

35.   In exchange for promising to obtain work authorization, legal permanent residency status, and other immigration-related benefits for the aliens, defendants would charge each alien thousands of dollars in fees for defendants, as well as additional document filing fees to file the petitions with USCIS.

36.   Defendants would charge some of the aliens a $500 consultation fee for the alien's initial meeting with defendant C. KALLAS.

37.   Defendants would also advise some aliens that defendant C. KALLAS, in his capacity as an Immigration official, could dismiss a pending removal proceeding, or prevent and hinder the removal of the alien by retaining the alien's official A-File.

11

38. Defendant M. KALLAS would communicate with some of the aliens in Spanish and would ask the aliens to provide the necessary documentation, as requested by defendant C. KALLAS.

39. Defendant M. KALLAS also would provide the aliens with information regarding the status of their immigration application.

40. Defendants would instruct aliens to deposit fees into bank accounts that were not in the defendants' names but that defendants controlled; defendants would also provide the aliens with the bank account information into which the fees were to be deposited.

41. Defendants would employ various aliens to work as recruiters, including aliens C.S. and H.D., in finding and referring to defendants other aliens who were willing to pay defendants for receiving immigration-related benefits.

42.  Defendants would meet with aliens or recruiters and collect cash payments from them for the immigration-related benefits.

43. Defendants would retain at their residence official A-Files of some aliens with the purpose of gathering information about the aliens; controlling the dissemination of information about the aliens to USCIS, ICE, DOL, and DHS; and hindering or delaying any possible removal proceedings against the aliens.

44. In addition to retaining official A-Files at their residence, defendants also would maintain at their residence files comprised of immigration-related documents, correspondence, and personal information for each alien ("working files").

45. Defendants also would retain at their residence United States currency in marked envelopes, which represented proceeds from defendants' immigration-related scheme.

46. Defendants would maintain copies of various ledgers on their home computer detailing the name, A-number, payments owed and received, or other immigration-related information for each alien.

47. Defendants would utilize the electronic mail ("email") accounts laimmigration@hotmail.com and mariakallas@hotmail.com to correspond with the aliens regarding their immigration application process and would use those same email accounts and mithostheelf@hotmail.com, botnoinc@hotmail.com, and mvconsultinginc.com to communicate with USCIS and DOL regarding the pending petitions.

48. In order to correspond with the aliens, defendants would provide the aliens with one or more of the following telephone numbers: (XXX) XXX-5298, (XXX) XXX-1945, (XXX) XXX-8230, (XXX) XXX-0720, (XXX) XXX-1068, and (XXX) XXX-0460.

49. Defendants would register, and cause to be registered, various post office boxes ("P.O. boxes") in the names of Botno Inc., Sweet Life, and MVCI, with defendant M. KALLAS or defendant M. KALLAS's mother, A.F., as applicants, or defendant C. KALLAS as authorized representative.  P.O. boxes 1275 and 9275 were both located in Alta Loma, California.  P.O. box 4637 was located in Rancho Cucamonga, California.

50.  If an alien provided the name of his or her own employer who was willing to sponsor that alien, defendants would use that employer instead of using Sweet Life, Botno Inc., or MVCI, and would charge the alien a reduced fee for employment-related immigration benefits.

51.  After accepting payment from the aliens for employment-related immigration work, if an alien did not have a sponsoring employer, defendants would utilize the companies Sweet Life, Botno

Inc., and MVCI to knowingly present, and cause to be presented, to DOL and USCIS employment-based immigration petitions, including Forms ETA-750 and ETA-9089 and I-140 petitions, and supporting documents on behalf of aliens containing false, fictitious, and fraudulent statements as to the following material facts:

a.   The existence of the job position offered to the alien at Sweet Life, Botno Inc., or MVCI, or other purported employers;

b.   The location of the alien's prospective employment at Sweet Life, Botno Inc., and MVCI;

c.   The wage offered to the alien by the prospective employer;

d.   Whether the purported employer Sweet Life, Botno Inc., or MVCI, had received compensation from the alien for filing the ETA-9089 with DOL in sponsoring the alien;

e.   Whether and where the prospective employment position had been advertised in newspapers by the prospective employer;

f.   The alien's foreign university or college degree equivalency evaluation; and

g.   The federal income tax filings of the prospective employer.

52.   Defendants would knowingly sign, and cause to be signed, as true, under the penalty of perjury, false and fraudulent employment-based immigration petitions and supporting documents on behalf of aliens as presented to DOL and USCIS.

53.   Defendants would tell aliens that the reason the fees defendants charged the aliens were so high was because defendant C. KALLAS had to pay others working inside the government.

14

54.   For a time period beginning in or about October 2004 and ending in or about December 2005, defendants also employed a processor, M.N., to assist defendants to complete some of the employment-based immigration petitions.

III. **OVERT ACTS**

In furtherance of the conspiracy and to accomplish its objects, defendants C. KALLAS and M. KALLAS, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California and elsewhere:

A.    **General Overt Acts**

Overt Act 1: On or about February 17, 2005, defendant C. KALLAS registered, and caused to be registered, email account laimmigration@hotmail.com with MSN Hotmail using an Internet connection registered to DHS.

Overt Act 2: On or between March 18, 2005, and March 20, 2005, defendant C. KALLAS, using email account mariakallas@hotmail.com, replied to an email from M.N. at email account xxxxxxesnp@yahoo.com, stating that defendant C. KALLAS had 10 individuals in need of labor certifications and further stated "I have one woman in her late twenties and one male early fifties who are U.S. citizens who are willing to marry.  If you have anyone who needs a spouse let me know."

Overt Act 3: In or about summer 2004, defendant C. KALLAS told alien C.S. that defendant C. KALLAS was second only to an Immigration Judge and could move C.S.'s immigration application to the front of the line.

Overt Act 4: On or about September 23, 2005, defendants created, and caused to be created, an online account with DOL with the account

15

name "valleycorp," which bore the employer's name as "Botno, Inc." and the employer's address as defendants' residence address.

Overt Act 5: On or about November 10, 2006, defendants created, and caused to be created, an online account with DOL with the account name "mvconsulting," the employer's name as "Mississippi Valley Consulting Co., Inc.," and the name of the account creator as G.O., with the employer's address listed in Galena, Illinois.

Overt Act 6: On or about June 26, 2008, defendants retained 26 official A-Files of 25 individual aliens within a hidden floor safe at their residence in Alta Loma, California.

Overt Act 7: On or about June 26, 2008, defendants retained $184,000 in United States currency in various envelopes within a hidden floor safe at their residence in Alta Loma, California.

Overt Act 8: On or about June 26, 2008, defendants maintained ledgers containing the names and A-numbers of over 60 different aliens on their home computer in their residence in Alta Loma, California.

Overt Act 9: On or about June 26, 2008, defendants accessed from their residence the email accounts laimmigration@hotmail.com, botnoinc@hotmail.com, mvconsultinginc@hotmail.com, mithostheelf@hotmail.com, and mariakallas@hotmail.com.

Overt Act 10: On or about June 26, 2008, defendants maintained on their home computer, at their residence, a ledger with the notation: "All new cases $25,000 without company, $21,000 with company."

B.   **Specific Aliens**

1.   **Alien M.E.S.**

Overt Act 11: In or about the months of July 2004 to October 2004, defendants met with alien M.E.S. for the purpose of soliciting,

1 offering, and promising to obtain employment-based immigration

2 benefits for alien M.E.S.

3     Overt Act 12: On or about July 20, 2004, in his official position

4 as an Assistant Chief Counsel at the OCC, defendant C. KALLAS

5 requested alien M.E.S.'s official A-File.

6     Overt Act 13: In or about the months of July 2004 to October

7 2004, defendants accepted a $500 cash payment from alien M.E.S. as an

8 initial consultation fee for meeting with defendant C. KALLAS and

9 accepted an additional $4,000 cash payment from alien M.E.S. for

10 defendants to obtain employment-based immigration benefits for alien

11 M.E.S., based on defendant C. KALLAS's position as an Immigration

12 official.

13     Overt Act 14: On or about October 12, 2005, defendants knowingly

14 submitted and caused to be filed with DOL an ETA-9089 on behalf of

15 alien M.E.S. that was signed by defendant M. KALLAS, and that

16 defendants caused to be signed, which falsely stated that alien M.E.S.

17 would be employed by Botno, Inc. as a "Purchasing Manager."

18     Overt Act 15: On or about June 3, 2008, defendant C. KALLAS told

19 alien M.E.S. "I have your file ... You're not being deported.  And I

20 filed everything and the labor cert was done .... I can start the

21 process over again, but it's, it's a whole different process again

22 ...."

23     Overt Act 16: On or about June 3, 2008, defendant M. KALLAS

24 contacted alien M.E.S. by telephone and told him that defendant C.

25 KALLAS could re-start the immigration procedure for an additional fee

26 of $20,000.

27     Overt Act 17: On or about June 25, 2008, defendant C. KALLAS

28 called alien M.E.S. by telephone, said "it's the Judge," and agreed to

1   meet alien M.E.S. in person on June 26, 2008, at the San Manuel Indian

2   Bingo & Casino in Highland, California (the "casino").

3       Overt Act 18: On or about June 26, 2008, defendants C. KALLAS and

4   M. KALLAS met with alien M.E.S. at the casino and accepted a $20,000

5   cash payment from alien M.E.S. as payment for defendants to obtain

6   employment-based immigration benefits for alien M.E.S., based upon

7   defendant C. KALLAS's position as an Immigration official.

8       Overt Act 19: On or about June 26, 2008, defendant M. KALLAS told

9   alien M.E.S., in Spanish, that defendant C. KALLAS had not brought

10  alien M.E.S.'s "file" "because it is risky to bring it.  Because if

11  they catch you they ... would take you and him ... and it would be too

12  risky."  Defendant M. KALLAS then told defendant C. KALLAS in English,

13  that "I say you have the file but you didn't bring it."

14      Overt Act 20: On or about June 26, 2008, defendant C. KALLAS told

15  alien M.E.S. that defendant C. KALLAS guaranteed alien M.E.S.'s

16  "resident card" "100%" and that "I got everything I actually got your

17  file.  Your personal file.... if immi- immigration doesn't have your

18  file, they can't deport you ever."

19      Overt Act 21: On or before June 26, 2008, defendants maintained

20  at their place of residence the official A-File of alien M.E.S.

21      Overt Act 22: On or about June 26, 2008, defendants maintained on

22  their home computer a ledger with the notation that alien M.E.S.

23  "(paid $9,500 owes $7,500)."  A separate ledger on defendants'

24  computer contained the notation for alien M.E.S.: "ordered A-file

25  7/20/04."

26  //

27  //

28  //

1

2.  **Alien R.B.**

2
       Overt Act 23: On or about July 17, 2004, defendants met in person

3
with alien R.B. for the purpose of soliciting, offering, and promising

4
to obtain employment-based immigration benefits for alien R.B.

5
       Overt Act 24: During the July 17, 2004, meeting with alien R.B.,

6
defendants accepted a $500 cash payment from alien R.B. as an initial

7
consultation fee for meeting with defendant C. KALLAS and accepted an

8
additional $3,000 cash payment from alien R.B. for defendants to

9
obtain employment-based immigration benefits for alien R.B., based

10
upon defendant C. KALLAS's position as an Immigration official.

11
       Overt Act 25: During the July 17, 2004, meeting with alien R.B.,

12
defendants told alien R.B. that defendant C. KALLAS was in charge of

13
deportations.  Defendant M. KALLAS told alien R.B. that defendant C.

14
KALLAS decides whether or not an alien remains in the country.

15
       Overt Act 26: In or about August 2005, defendant M. KALLAS

16
instructed alien R.B. to mail a check to defendants as payment towards

17
obtaining the employment-based immigration benefits for alien R.B.

18
Defendant M. KALLAS instructed alien R.B. to make the check payable to

19
A.F., defendant M. KALLAS's mother.

20
       Overt Act 27: On or about February 19, 2006, defendants knowingly

21
submitted and caused to be filed with DOL a Form ETA-9089 on behalf of

22
alien R.B. that was signed by defendant M. KALLAS, and that defendants

23
caused to be signed, which falsely stated that alien R.B. would be

24
employed by Botno, Inc. as a "Sales Engineer."

25
       Overt Act 28: On or about May 17, 2006, defendant M. KALLAS

26
instructed alien R.B. to deposit money into Washington Mutual Bank

27
account XXX-XXX748-6 in the name of L.A., defendant M. KALLAS's

28
grandmother, as payment towards obtaining immigration benefits for

alien R.B., based on defendant C. KALLAS's position as an Immigration official.

Overt Act 29: On or about July 26, 2006, defendants knowingly submitted and caused to be filed with USCIS a false Form I-140 and an accompanying certified ETA-9089.

Overt Act 30: On or before June 26, 2008, defendants maintained a working file for alien R.B. at their residence in Alta Loma, California.

Overt Act 31: On or about June 26, 2008, defendants maintained on their home computer a ledger with the notation that alien R.B.: "(paid $17,000) Labor Cert approved paid money orders for [R.B.]."

3.   **Alien M.E.V.A.**

Overt Act 32: In or before January 2005, defendant M. KALLAS told alien M.E.V.A that she was an Immigration official.

Overt Act 33: In or after January 2005, defendant M. KALLAS introduced alien M.E.V.A. to defendant C. KALLAS and told alien M.E.V.A. that defendant C. KALLAS was an Immigration Judge.

Overt Act 34: On or before March 14, 2005, defendant M. KALLAS told alien M.E.V.A. to deposit, and caused alien M.E.V.A. to deposit, $1,500 into Washington Mutual Bank account number XXX-XXX467-2 in the name of M.F.I.S., defendant M. KALLAS's aunt, as payment for defendants to obtain employment-based immigration benefits for alien M.E.V.A.

Overt Act 35: On or about July 25, 2005, defendants mailed and caused to be mailed a letter to California Employment Development Department, which defendant M. KALLAS signed as President of Sweet Life, Inc., and enclosed Form ETA 750 for alien M.E.V.A. that was signed by defendant M. KALLAS, and that defendants caused to be

1  signed, on which defendant M. KALLAS falsely represented that she
2  would offer alien M.E.V.A. a job as a "Budget Analyst" with Sweet
3  Life, Inc.

4      Overt Act 36:  On or about February 6, 2007, defendants sent, and
5  caused to be sent, to USCIS a document dated May 2, 2000, that
6  purported to be a college degree for alien M.E.V.A. from "La
7  Universidad de Guadalajara," which document was in fact false because
8  alien M.E.V.A. never attended any college, including La Universidad de
9  Guadalajara.

10     Overt Act 37:  On or about June 26, 2008, defendants maintained
11 on their home computer a ledger with the notation that alien M.E.V.A.
12 "Paid and paid money order I-140 approved."

13          4.  Alien C.C.C.

14     Overt Act 38: On or before August 31, 2005, defendant M. KALLAS
15 met with alien C.C.C. and her husband alien R.R. and examined their
16 passports before taking alien R.R. to meet with defendant C. KALLAS.

17     Overt Act 39: In or about February 2006, in Miami, Florida,
18 defendants met with alien C.C.C. and her husband, alien R.R., at which
19 meeting defendant M. KALLAS told them that defendant C. KALLAS held a
20 high-level position with United States Immigration and that there
21 would be no problems with the approval of the immigration petitions.

22     Overt Act 40: On or before August 3, 2006, defendant M. KALLAS
23 instructed alien C.C.C. to deposit $6,120 into the account of L.A.,
24 defendant M. KALLAS's grandmother, with Washington Mutual Bank account
25 number XXX-XXX748-6, as payment for defendants to obtain employment-
26 based immigration benefits for alien C.C.C. and her husband alien
27 R.R., based on defendant C. KALLAS's position as an Immigration
28 official.

Overt Act 41: On or about September 8, 2006, defendants knowingly submitted and caused to be filed with USCIS a Form I-140 and an accompanying certified ETA-9089 on behalf of alien C.C.C. that was signed by defendant M. KALLAS, and that defendants caused to be signed, which falsely stated that alien C.C.C. would be employed by Botno Inc. as a "Social and Human Services Assistant."

Overt Act 42: On or about June 26, 2008, defendants maintained at their place of residence the official A-Files of aliens C.C.C. and R.R.

Overt Act 43: On or about June 26, 2008, defendants maintained on their home computer a ledger stating that alien C.C.C. "(paid $18,000) paid money orders about $6,100." The ledger also stated that "I ordered the files to see why they were denied."

### 5.   Alien B.G.P.

Overt Act 44: In or about November and December 2006, defendant M. KALLAS told defendants' housekeeper, F.G., alien B.G.P.'s mother, that for a fee of $7,000, defendant C. KALLAS would assist alien B.G.P. in her immigration proceedings.

Overt Act 45: Beginning in or about November 2006, F.G., alien B.G.P.'s mother, began paying defendants monthly cash payments in the amount of $600 to $700, as payment for defendant C. KALLAS's assisting alien B.G.P. in her pending immigration proceedings.

Overt Act 46: On or about November 30, 2006, defendant C. KALLAS met with alien B.G.P. and prepared, and instructed alien B.G.P. to sign, a letter dismissing the law firm of J. & H. as alien B.G.P.'s immigration attorneys.

Overt Act 47: On or after November 30, 2006, defendant C. KALLAS instructed alien B.G.P. to pretend that alien B.G.P. did not know

22

1  defendant C. KALLAS when they appeared in court for alien B.G.P.'s
2  immigration removal hearing and that alien B.G.P. should not talk to
3  defendant C. KALLAS while they were both in court.

4      Overt Act 48: In or about December 2006, defendant M. KALLAS
5  directed F.G., alien B.G.P.'s mother, to remind alien B.G.P. that
6  alien B.G.P. should pretend that she did not know defendant C. KALLAS
7  while defendant C. KALLAS and alien B.G.P. appeared in court for alien
8  B.G.P.'s removal proceeding.

9      Overt Act 49: On or before December 18, 2006, defendant C. KALLAS
10 prepared, and caused to be prepared, a memorandum on official ICE
11 letterhead, purportedly from and signed by DRO officer R.M.R., which
12 claimed that the DRO was seeking to terminate alien B.G.P.'s removal
13 proceedings, which document was fabricated and false because DRO
14 officer R.M.R. did not prepare or sign the document and the DRO did
15 not seek to terminate B.G.P.'s removal proceeding.

16     Overt Act 50: On or about December 18, 2006, defendant C. KALLAS,
17 in his official capacity as Assistant Chief Counsel with the OCC,
18 signed and filed with the EOIR a legal document entitled "Motion to
19 Advance & Terminate," wherein he made a formal request on behalf of
20 ICE to terminate the removal proceedings against alien B.G.P.

21     Overt Act 51: On or about December 19, 2006, defendant C. KALLAS,
22 in his official capacity as an Assistant Chief Counsel with OCC,
23 appeared in Immigration Court before Immigration Judge M.T. and
24 requested dismissal of the pending removal proceedings against alien
25 B.G.P., stating on the record: "The government wishes to terminate the
26 case.  The respondent is cooperating with the agency.  And for that
27 matter we ask for a termination today."

28

1     <u>Overt Act 52</u>: On or about June 26, 2008, defendants maintained
2 the official A-File of alien B.G.P. at their place of residence.

3     <u>Overt Act 53</u>: On or about June 26, 2008, defendants maintained on
4 their home computer a ledger with the notation for alien B.G.P.: "paid
5 $6,900 out of $7,000 (payment of $700 was on 7/17 in Vegas; payment
6 $600 on 8/21/07; payment $700 on 9/17/07)."

7            **6.**   <u>**Alien M.C.**</u>

8     <u>Overt Act 54</u>: On or about May 11, 2006, defendant M. KALLAS
9 instructed alien M.C. to deposit a check in the amount of $10,000,
10 payable to L.A., defendant M. KALLAS's grandmother, into Washington
11 Mutual Bank account number XXX-XXX748-6, as payment for defendant C.
12 KALLAS to obtain employment-based immigration benefits for alien M.C.

13     <u>Overt Act 55</u>: On or about May 16, 2006, defendant C. KALLAS sent
14 an email to alien M.C. from email account laimmigration@hotmail.com
15 telling alien M.C. that defendant C. KALLAS had completed the labor
16 certification application and that "it should be approved in 1 month;
17 the normal time is 4 years, so I hope you will be happy with my
18 expediency."

19     <u>Overt Act 56</u>: On or about June 27, 2006, defendant C. KALLAS sent
20 an email to alien M.C. from email account laimmigration@hotmail.com,
21 responding to an inquiry from alien M.C. regarding the status of alien
22 M.C.'s application wherein defendant C. KALLAS stated "[t]he database
23 that I use can only be accessed from my work computer. So I have to
24 check when I get back to work."

25     <u>Overt Act 57</u>: On or about October 19, 2006, defendant C. KALLAS
26 sent an email to alien M.C. from email account
27 laimmigration@hotmail.com, instructing alien M.C. to deposit funds

28

1   into Washington Mutual Bank account number XXX-XXX748-6 in the name of
2   L.A.

3       Overt Act 58: On or about January 10, 2007, defendants knowingly
4   submitted and caused to be filed with USCIS a Form I-140 and a
5   certified ETA-9089 on behalf of alien M.C. and attached a falsified
6   2006 IRS Form 1120 tax return for G.C.G. International Services Corp.
7   in support of the I-140 petition.

8       Overt Act 59: On or before June 26, 2008, defendants maintained
9   at their place of residence a working file for alien M.C.

10      Overt Act 60: On or about June 26, 2008, defendants maintained on
11  their home computer a ledger with the notation that alien M.C. "(paid
12  $20,000)."

13          7.   Alien A.L.C.

14      Overt Act 61: On or about January 20, 2005, defendants knowingly
15  submitted and caused to be filed with DOL a Form ETA-750 on behalf of
16  alien A.L.C. that was signed by defendant M. KALLAS, and that
17  defendants caused to be signed, which falsely stated that alien A.L.C.
18  would be employed by Sweet Life as an "Adm Financial Assist" at
19  defendant's residence in Alta Loma, California.

20      Overt Act 62: On or about November 18, 2004, in his official
21  position as an Assistant Chief Counsel at the OCC, defendant C. KALLAS
22  obtained the official A-File of alien A.L.C.

23      Overt Act 63: On or about June 26, 2008, defendants maintained on
24  their home computer a ledger with the notation that alien A.L.C.
25  "(owes 0)."

26          8.   Alien S.E.

27      Overt Act 64: On or about December 18, 2006, in his official
28  position as an Assistant Chief Counsel at the OCC, defendant C. KALLAS

obtained the three official A-Files of: (a) alien S.E.; (b) alien
L.M.C. (alien S.E.'s wife); and © alien A.E.M. (alien S.E.'s
daughter).

Overt Act 65: On or about May 17, 2007, defendant C. KALLAS sent,
and caused to be sent, an email to alien S.E. from email account
"laimmigration@hotmail.com," stating that "internal records" were more
accurate in determining the status of the I-140 petition of alien
S.E.'s wife, alien L.M.C.

Overt Act 66: On or about June 26, 2008, defendants maintained at
their place of residence the three official A-Files of: (a) alien
S.E.; (b) alien L.M.C.; and © alien A.E.M.

Overt Act 67: On or about June 26, 2008, defendants maintained on
their home computer a ledger with the notation that alien S.E. "(Paid
in full $17,000) paid money orders Wife's I-140: [] Pending."

### 9.   Alien H.Y.M.

Overt Act 68: On or about April 5, 2005, in his official position
as an Assistant Chief Counsel at the OCC, defendant C. KALLAS obtained
alien H.Y.M.'s official A-File.

Overt Act 69: In or about August or September 2005, defendant M.
KALLAS told alien H.Y.M. that M. KALLAS's husband, defendant C.
KALLAS, was an official with United States Immigration, and that alien
H.Y.M. would have to pay $16,000 to defendant M. KALLAS in order for
defendant C. KALLAS to obtain immigration benefits for alien H.Y.M.

Overt Act 70: On or about June 26, 2008, defendants maintained at
their place of residence the official A-File of alien H.Y.M.

Overt Act 71: On or about June 26, 2008, defendants maintained on
their home computer a ledger with the notation that alien H.Y.M.
"(owes 0)."

10. **Alien F.R.C.**

Overt Act 72: On or about March 30, 2005, in his official position as an Assistant Chief Counsel at the OCC, defendant C. KALLAS obtained alien F.R.C.'s official A-File.

Overt Act 73: On or about February 19, 2006, defendants knowingly submitted and caused to be filed with DOL a Form ETA-9089 on behalf of alien F.R.C. that was signed by defendant M. KALLAS, and that defendants caused to be signed, which falsely stated that alien F.R.C. would be employed by Botno Inc. as a "Construction and Building Inspector."

Overt Act 74:  On or about August 11, 2006, defendants knowingly submitted and caused to be filed with USCIS another false Form I-140 and an accompanying certified ETA-9089 on behalf of alien F.R.C.

Overt Act 75:  On or about June 26, 2008, defendants maintained at their place of residence the official A-File of alien F.R.C.

Overt Act 76: On or about June 26, 2008, defendants maintained on their home computer a ledger with the notation for alien F.R.C. "Have A-file" and that alien F.R.C. "(owes 0)."

11. **Alien H.D.**

Overt Act 77: On or between May 24, 2005, and June 1, 2005, defendant C. KALLAS sent, and caused to be sent, an email from email account laimmigration@hotmail.com to M.N. that instructed M.N. to "PICK ANY TITLE" for alien H.D.'s job position.

Overt Act 78: On or about May 6, 2007, defendant C. KALLAS sent an email from email account laimmigration@hotmail.com to alien H.D. at email account XXXXXXejia@hotmail.com: "[a]fter talking to my wife, we decided only to charge $1,000 in addition to the money orders required."

27

Overt Act 79: On or about September 15, 2007, defendant C. KALLAS sent an email from email account laimmigration@hotmail.com to alien H.D. at email account XXXXXXejia@hotmail.com, in which he provided alien H.D. with Washington Mutual Bank account number XXX-XXXX748-6 in the name of L.A., defendant M. KALLAS's grandmother.

Overt Act 80: On or about October 12, 2007, defendant C. KALLAS sent an email from email account laimmigration@hotmail.com to alien H.D. at email account XXXXXXejia@hotmail.com, in which he directed alien H.D. to "erase my name from your 'contact' list and replace it with LA Immigration.  My name is coming through on all your e-mails in the subject line."

Overt Act 81: On or about December 18, 2007, defendant C. KALLAS sent an email from email account laimmigration@hotmail.com to alien H.D. at email account XXXXXXejia@hotmail.com, in which he instructed alien H.D. that if questioned by immigration authorities when returning to the United States, alien H.D. should say that he has not entered the United States illegally, and if the computer states that alien H.D. had in fact entered the United States illegally, alien H.D. should answer: "No," "That would be a computer error. (Happens very often)."

Overt Act 82: On or about June 26, 2008, defendants maintained on their home computer a ledger with the notation for alien H.D. "(paid $1,000 + money orders) Labor cert approved for MVC I-40 pending."

**12.  Alien N.A.**

Overt Act 83: On or about October 3, 2003, defendants caused to be deposited a check from alien N.A. into Washington Mutual Bank account XXX-XXX461-0, which was held in defendants' names.

1   Overt Act 84: On or about June 26, 2008, defendants maintained on

2   their home computer a ledger with notation for alien N.A.: "file

3   arrived."

4        13.   **Alien J.M.S. aka A.C.B.**

5   Overt Act 85: On or about March 17, 2005, defendant C. KALLAS

6   prepared, and caused to be prepared, a letter on official Department

7   of Homeland Security letterhead addressed from "Constantine Kallas,

8   DHS/ICE" to the "County Court House" in Portland, Oregon, requesting

9   that a copy of the State of Oregon criminal history of alien J.M.S.,

10  a.k.a. A.C.B., be sent to defendant C. KALLAS at defendants' residence

11  address in Alta Loma, California.

12  Overt Act 86: On or after March 30, 2005, defendants received and

13  maintained at their residence in Alta Loma, California, a copy of the

14  State of Oregon criminal history record of alien J.M.S. a.k.a. A.C.B.

15  Overt Act 87: On or about June 26, 2008, defendants maintained on

16  their home computer a ledger that stated that alien A.C.B. "Paid

17  $15500."

18       14.   **Alien J.L.A.T.**

19  Overt Act 88: On or about February 12, 2007, defendant M. KALLAS

20  sent and caused to be sent to USCIS a letter on Botno Inc. letterhead,

21  which defendant M. KALLAS had signed as President of Botno Inc., in

22  relation to alien J.L.A.T.'s immigration application, attaching false

23  and fabricated letters purportedly prepared and signed by Bauer &

24  Fonseca P.C., to establish that Botno Inc. had "substantial assets."

25  Overt Act 89: On or about March 6, 2007, defendant M. KALLAS sent

26  and caused to be sent to USCIS a letter on Botno Inc. letterhead,

27  which defendant M. KALLAS had signed as President of Botno Inc., in

28  relation to alien J.L.A.T.'s application and attached a document

purporting to be the 2006 federal income tax return for Botno Inc., which was signed and showed gross receipts or sales of $361,349.56 and ordinary business income of $346,545.56, which document was in fact false because the actual 2006 tax return for Botno Inc. that was filed with the IRS did not report any income.

Overt Act 90: On or about June 26, 2008, defendants maintained on their home computer a ledger with a notation for alien J.L.A.T. stating "Searching the I-485 status at SRC-[XX-XXX-XXXXX] shows invalid because the file was moved to D.C."

15.   Alien L.H.B.

Overt Act 91: On or about January 28, 2008, defendants sent and caused to be sent to USCIS a letter relating to alien L.H.B.'s immigration application and attached a falsified "Evaluation of Academic Credencials" purportedly prepared by Morningside Evaluations and Consulting and purportedly signed by Dr. G.L.I., which document was fabricated and false because neither Morningside Evaluations and Consulting nor Dr. G.L.I. prepared or signed the document.

Overt Act 92: On or about June 26, 2008, defendants maintained on their home computer at their residence a ledger stating for alien L.H.B.: "For both her and husband, paid full $23,000 paid money orders."

16.   Additional Aliens

On or about the dates set forth below, defendants knowingly submitted and caused to be filed with DOL, ETA-9089 petitions on behalf of the aliens set forth below that contained materially false, fictitious, and fraudulent statements as described below:

30

| OVERT ACT | DATE | ALIEN | FALSE STATEMENT |
|---|---|---|---|
| 93 | 09/26/2005 | E.M. | 1. Worksite Address<br>2. Employment Advertisement |
| 94 | 10/07/2005 | C.C. | 1. Worksite Address<br>2. Employment Advertisement |
| 95 | 10/09/2005 | J.S.M. | 1. Worksite Address<br>2. Employment Advertisement |
| 96 | 10/09/2005 | L.P. | 1. Worksite Address<br>2. Employment Advertisement |
| 97 | 10/11/2005 | V.H. | 1. Worksite Address<br>2. Employment Advertisement |
| 98 | 10/12/2005 | E.G. | 1. Worksite Address<br>2. Employment Advertisement |
| 99 | 02/18/2006 | F.O.C. | 1. Worksite address<br>2. Employment Advertisement |
| 100 | 02/19/2006 | A.M.R. | 1. Work site address<br>2. Employment Advertisement |
| 101 | 02/19/2006 | E.M. | 1. Worksite Address<br>2. Employment Advertisement |
| 102 | 02/19/2006 | V.H. | 1. Worksite Address<br>2. Employment Advertisement |
| 103 | 05/07/2006 | F.G.G. | 1. Worksite Address<br>2. Employment Advertisement |
| 104 | 05/29/2006 | G.P. | 1. Worksite Address<br>2. Employment Advertisement |
| 105 | 07/16/2006 | M.R. | 1. Worksite Address<br>2. Employment Advertisement |
| 106 | 10/09/2006 | M.G. | 1. Worksite address<br>2. Employment Advertisement |
| 107 | 10/16/2006 | C.C. | 1. Worksite Address<br>2. Employment Advertisement |
| 108 | 10/16/2006 | M.G. | 1. Worksite address<br>2. Employment Advertisement |
| 109 | 02/12/2007 | A.M.R. | 1. Worksite Address<br>2. Employment Advertisement |
| 110 | 02/12/2007 | E.G. | 1. Worksite Address<br>2. Employment Advertisement |
| 111 | 02/12/2007 | F.O.C. | 1. Worksite Address<br>2. Employment Advertisement |
| 112 | 02/12/2007 | L.C. | 1. Worksite Address<br>2. Employment Advertisement |
| 113 | 02/12/2007 | L.M.C. | 1. Worksite Address<br>2. Employment Advertisement |
| 114 | 02/12/2007 | R.R. | 1. Worksite Address<br>2. Employment Advertisement |
| 115 | 02/12/2007 | V.H. | 1. Worksite Address<br>2. Employment Advertisement |
| 116 | 03/01/2007 | M.G. | 1. Worksite Address<br>2. Employment Advertisement |
| 117 | 07/20/2007 | F.G.G. | 1. Worksite Address<br>2. Employment Advertisement |

On or about the dates set forth below, defendants knowingly subscribed and caused to be subscribed as true under penalty of perjury, a false statement with respect to a material fact in a Form I-140 petition, and knowingly presented and caused to be presented the Form I-140 or attachment as described below:

| Overt Act | Date Filed | Alien | False Statement |
|---|---|---|---|
| 118 | 06/09/2006 | F.O.C. | 1. Worksite Address<br>2. ETA-9089 |
| 119 | 06/19/2006 | G.P. | 1. Worksite Address<br>2. ETA-9089 |
| 120 | 07/12/2006 | E.M. | 1. Worksite Address<br>2. ETA-9089 |
| 121 | 07/26/2006 | C.C. | 1. Worksite Address<br>2. ETA-9089 |
| 122 | 08/09/2006 | F.G.G. | 1. Worksite Address<br>2. ETA-9089 |
| 123 | 08/11/2006 | F.R.C. | 1. Worksite Address<br>2. ETA-9089 |
| 124 | 08/14/2006 | A.M.R. | 1. Worksite Address<br>2. ETA-9089 |
| 125 | 08/15/2006 | J.S.M. | 1. Worksite Address<br>2. ETA-9089 |
| 126 | 08/21/2006 | M.R. | 1. Worksite Address<br>2. ETA-9089 |
| 127 | 02/26/2007 | V.H. | 1. Worksite Address<br>2. ETA-9089 |
| 128 | 03/19/2007 | L.M.C. | 1. Worksite Address<br>2. ETA-9089 |
| 129 | 05/29/2007 | L.C. | 1. Worksite Address<br>2. ETA-9089<br>3. Employer's tax returns |

## COUNT TWO

[18 U.S.C. §§ 201(b)(2), 2(a)]

[Bribery]

55.  Beginning in or about 2004, and ending in or about June through September 2006, in San Bernardino County, within the Central District of California, defendant C. KALLAS, a public official, namely an Assistant Chief Counsel within ICE, a branch within DHS, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do an act and omit to do an act in violation of his official duty.  In doing so, defendant C. KALLAS, in his purported capacity as a United States Immigration Judge, accepted payment of at least $9,000 from alien M.E.S., an undocumented alien residing in the United States, in exchange for promising to obtain work authorization and legal permanent residency status for alien M.E.S.

56.  At the above time and place, defendant M. KALLAS aided, abetted, counseled, commanded, induced and procured the commission of the offense alleged above.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT THREE**

[18 U.S.C. §§ 201(b)(2), 2(a)]

[Bribery]

57.  Beginning on or about July 17, 2004, and ending in or about July 2007, in San Bernardino County, within the Central District of California, defendant C. KALLAS, a public official, namely an Assistant Chief Counsel within ICE, a branch within DHS, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do an act and omit to do an act in violation of his official duty.  In doing so, defendant C. KALLAS accepted payment of at least $17,000 from alien R.B., an undocumented alien residing in the United States, in exchange for promising to obtain work authorization and legal permanent residency status for alien R.B.

58.  At the above time and place, defendant M. KALLAS aided, abetted, counseled, commanded, induced and procured the commission of the offense alleged above.

34

## COUNT FOUR

[18 U.S.C. §§ 201(b)(2), 2(a)]

[Bribery]

59.  Beginning on or before January 2005, and ending on or about June 26, 2008, in San Bernardino County, within the Central District of California, defendant C. KALLAS, a public official, namely an Assistant Chief Counsel within ICE, a branch within DHS, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do an act and omit to do an act in violation of his official duty.  In doing so, defendant C. KALLAS, in his purported capacity as a United States Immigration Judge, accepted payment of at least $1,500 from alien M.E.V.A., an undocumented alien residing in the United States, in exchange for promising to obtain work authorization and legal permanent residency status for alien M.E.V.A.

60.  At the above time and place, defendant M. KALLAS aided, abetted, counseled, commanded, induced and procured the commission of the offense alleged above.

## COUNT FIVE

[18 U.S.C. §§ 201(b)(2), 2(a)]

[Bribery]

61.   Beginning on or about August 2005, and ending in or about February 2008, in San Bernardino County, within the Central District of California, defendant C. KALLAS, a public official, namely an Assistant Chief Counsel within ICE, a branch within DHS, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do an act and omit to do an act in violation of his official duty.  In doing so, defendant C. KALLAS accepted payment of at least $5,000 from alien C.C.C., an undocumented alien intending to reside in the United States, in exchange for promising to obtain work authorization and legal permanent residency status for alien C.C.C.

62.   At the above time and place, defendant M. KALLAS aided, abetted, counseled, commanded, induced and procured the commission of the offense alleged above.

## COUNT SIX

[18 U.S.C. §§ 201(b)(2), 2(a)]

[Bribery]

63.   Beginning in or about November 2006, and ending on or about December 19, 2006, in San Bernardino County, within the Central District of California, defendant C. KALLAS, a public official, namely an Assistant Chief Counsel within ICE, a branch within DHS, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do an act and omit to do an act in violation of his official duty.   In doing so, defendant C. KALLAS accepted payment of at least $6,000 from F.G., defendants' housekeeper, in exchange for using his official position as an Assistant Chief Counsel with the OCC to influence an immigration proceeding pending before the EOIR against F.G.'s daughter, alien B.G.P., wherein defendant C. KALLAS did sign and file with the EOIR a legal document entitled "Motion to Advance & Terminate," in which defendant C. KALLAS made a formal request on behalf of ICE to terminate the removal proceedings against F.G.'s daughter, alien B.G.P.

64.   At the above time and place, defendant M. KALLAS aided, abetted, counseled, commanded, induced and procured the commission of the offense alleged above.

## COUNT SEVEN

[18 U.S.C. §§ 201(b)(2), 2(a)]

[Bribery]

65.  On or about June 26, 2008, in San Bernardino County, within the Central District of California, defendant C. KALLAS, a public official, namely an Assistant Chief Counsel within ICE, a branch within DHS, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for: (1) being influenced in the performance of an official act; (2) being influenced to commit and aid in committing, and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States; and (3) being induced to do an act and omit to do an act in violation of his official duty.   In doing so, defendant C. KALLAS, in his purported capacity as a United States Immigration Judge, accepted payment of $20,000 from alien M.E.S., an undocumented alien residing in the United States, in exchange for promising to obtain work authorization and legal permanent residency status for alien M.E.S.

66.  At the above time and place, defendant M. KALLAS aided, abetted, counseled, commanded, induced and procured the commission of the offense alleged above.

### COUNT EIGHT

[18 U.S.C. §§ 1505, 2(a)]

[Obstruction Of Justice]

67.   Beginning on or about November 2006 and ending on December 19, 2006, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendant C. KALLAS, a public official, namely an Assistant Chief Counsel within ICE, a branch within DHS, intentionally and corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the due and proper administration of the law under which a pending proceeding was being had, namely, an immigration removal proceeding for alien B.G.P., before the EOIR, an agency of the United States.

68.   Specifically, on or about December 18, 2006, defendant C. KALLAS intentionally and corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the EOIR's removal proceeding of alien B.G.P. by filing, and causing to be filed, a legal document entitled "Motion to Advance & Terminate," in which defendant C. KALLAS made a formal request on behalf of ICE to terminate the removal proceedings against alien B.G.P.

69.   At the above times and places, defendant M. KALLAS aided, abetted, counseled, commanded, induced and procured the commission of the offense alleged above.

## COUNT NINE

[18 U.S.C. §§ 1505, 2(a)]

[Obstruction Of Justice]

70.   On or about December 19, 2006, in Los Angeles County, within the Central District of California, and elsewhere, defendant C. KALLAS, a public official, namely an Assistant Chief Counsel within ICE, a branch within DHS, intentionally and corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the due and proper administration of the law under which a pending proceeding was being had, namely, an immigration removal proceeding for alien B.G.P., before the EOIR, an agency of the United States.

71.   Specifically, on or about December 19, 2006, defendant C. KALLAS intentionally and corruptly influenced, obstructed, and impeded, and endeavored to influence, obstruct, and impede, the EOIR's removal proceeding of alien B.G.P. by appearing in Immigration Court in his official capacity as a Assistant Chief Counsel before United States Immigration Judge M.T. and sought to terminate the pending immigration removal proceedings of alien B.G.P.

72.   At the above time and place, defendant M. KALLAS aided, abetted, counseled, commanded, induced and procured the commission of the offense alleged above.

## COUNTS TEN THROUGH EIGHTEEN

[18 U.S.C. §§ 1546(a), 2(a), 2(b)]

[Fraud And Misuse Of Immigration Documents]

73.   On or about the dates set forth below, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS, each aiding, abetting, counseling, commanding, procuring, and inducing the other and aided, abetted, counseled, commanded, procured, and induced by others known and unknown to the Grand Jury, knowingly made and caused to be made under oath, and knowingly subscribed and caused to be subscribed as true under penalty of perjury, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder for authorization to stay or to be employed in the United States, and knowingly presented and caused to be presented such application, affidavit, and other document that contained such false statement, as described below:

| COUNT | ALIEN | DATE FILED | PETITION | FALSE STATEMENTS |
|-------|-------|-----------|----------|------------------|
| 10 | M.E.V.A. | 06/02/2006 | I-140 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. ETA-9089 |
| 11 | H.D. | 06/16/2006 | I-140 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. ETA-9089 |
| 12 | R.B. | 07/26/2006 | I-140 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. ETA-9089 |

| COUNT | ALIEN | DATE FILED | PETITION | FALSE STATEMENTS |
|---|---|---|---|---|
| 13 | J.L.A.T. | 08/08/2006 | I-140 | 1. Worksite Address<br>2. ETA-9089 |
| 14 | C.C.C. | 09/08/2006 | I-140 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4.ETA-9089 |
| 15 | M.C. | 01/10/2007 | I-140 | 1. Employer's Gross and Annual Income<br>2. Wage Offer<br>3. Employer's tax returns |
| 16 | L.H.B. | 02/26/2007 | I-140 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite address<br>4. Employer's tax return |
| 17 | H.D. | 07/25/2007 | I-140 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. ETA-9089<br>5. Employer's tax return |
| 18 | A.M.R. | 07/30/2007 | I-140 | 1. Worksite Address<br>2. ETA-9089<br>3. Employer's tax returns |

## COUNTS NINETEEN THROUGH TWENTY-SEVEN

[18 U.S.C. §§ 1028A(a)(1), 2(a), 2(b)]

[Aggravated Identity Theft]

74.   On or about the dates set forth below, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS, each aiding, abetting, counseling, commanding, procuring, and inducing the other and aided, abetted, counseled, commanded, procured, and induced by others known and unknown to the Grand Jury, knowingly transferred, possessed, and used, and caused to be knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, that is, the names and signatures of other individuals as listed below, during and in relation to fraud and misuse of immigration documents, a felony violation of Title 18, United States Code, Section 1546.

| COUNT | DATE | FALSE DOCUMENT | MEANS OF IDENTIFICATION USED | INITIALS OF VICTIM | SUBMITTED WITH APPLICATION OF ALIEN [COUNT] |
|---|---|---|---|---|---|
| 19 | 01/10/07 | Morningside credential evaluation | 1. Name<br>2. Signature | G.L.I. | M.C. [Count 15] |
| 20 | 02/12/07 | Morningside credential evaluation | 1. Name<br>2. Signature | G.L.I. | J.L.A.T. [Count 13] |
| 21 | 02/14/07 | Morningside credential evaluation | 1. Name<br>2. Signature | G.L.I. | M.E.V.A. [Count 10] |

| COUNT | DATE | FALSE DOCUMENT | MEANS OF IDENTIFICATION USED | INITIALS OF VICTIM | SUBMITTED WITH APPLICATION OF ALIEN [COUNT] |
|---|---|---|---|---|---|
| 22 | 05/14/07 | Business Authority accounting letter | 1. Name<br>2. Signature | S.M. | M.C. [Count 15] |
| 23 | 05/14/07 | 2006 income tax Return for G.C.G. | 1. Name<br>2. Signature | S.M. | M.C. [Count 15] |
| 24 | 07/25/07 | Morningside credential evaluation | 1. Name<br>2. Signature | G.L.I. | H.D. [Count 17] |
| 25 | 07/30/07 | Morningside credential evaluation | 1. Name<br>2. Signature | G.L.I. | A.M.R. [Count 18] |
| 26 | 09/05/07 | 2006 income tax return for H.M.A.V and M.J.A. | 1. Name<br>2. Signature<br>3. Social Security Number | H.M.A.V. | L.H.B. [Count 16] |
| 27 | 01/29/08 | Morningside credential evaluation | 1. Name<br>2. Signature | G.L.I. | L.H.B. [Count 16] |

## COUNTS TWENTY-EIGHT THROUGH THIRTY-SEVEN

[18 U.S.C. §§ 1001(a)(2), 2(a), 2(b)]

[False Statements]

75.  On or about the dates set forth below, in San Bernardino County, within the Central District of California, and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States, specifically the DOL, defendants C. KALLAS and M. KALLAS, each aiding, abetting, counseling, commanding, procuring, and inducing the other and aided, abetted, counseled, commanded, procured, and induced by others known and unknown to the Grand Jury, knowingly and willfully made and caused to be made, materially false, fictitious, and fraudulent statements and representations.  More specifically, defendants, each aiding, abetting, counseling, commanding, and inducing the other, submitted, and caused to be submitted, to DOL Forms ETA-9089 that contained false statements with respect to material facts when, in truth and in fact, as defendants then well knew, the ETA-9089 forms contained false, fictitious, and fraudulent statements and representations as described below:

| COUNT | ALIEN | DATE | FALSE STATEMENT |
|---|---|---|---|
| 28 | M.E.V.A. | 10/02/2005 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. Employment advertisement<br>5. Compensation to employer |
| 29 | H.D. | 10/03/2005 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. Compensation to employer<br>5. Employment Advertisement |

| COUNT | ALIEN | DATE | FALSE STATEMENT |
|-------|-------|------|-----------------|
| 30 | M.E.S. | 10/12/2005 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. Employment advertisement<br>5. Compensation to employer |
| 31 | C.C.C. | 02/18/2006 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. Employment advertisement<br>5. Compensation to employer |
| 32 | R.B. | 02/19/2006 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. Compensation to employer<br>5. Employment advertisement |
| 33 | J.L.A.T. | 03/23/2006 | 1. Worksite Address<br>2. Employment advertisement |
| 34 | C.C.C. | 10/16/2006 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. Employment advertisement<br>5. Compensation to employer |
| 36 | A.M.R. | 02/17/2007 | 1. Worksite Address<br>2. Employment Advertisement |
| 37 | H.D. | 04/22/2007 | 1. Job Title and Position<br>2. Wage Offer<br>3. Worksite Address<br>4. Compensation to employer<br>5. Employment advertisement |

## COUNT THIRTY-EIGHT

[18 U.S.C. § 1920]

[False Statement Or Fraud To Obtain Federal Employees' Compensation]

76.   Between on or about March 16, 2005, and on or about June 16, 2006, in San Bernardino County, within the Central District of California, and elsewhere, defendant C. KALLAS knowingly and willfully falsified, concealed, and covered up a material fact in connection with an application for and receipt of compensation and other benefit and payment under the Federal Employee's Compensation Act, in that defendant C. KALLAS failed to disclose to DOL - Office of Workers' Compensation Programs as required under federal law his work-related activities for alien clients, to include aliens A.M.R., C.C.C., E.G., F.G.G., F.O.C., H.D., J.L.A.T., M.E.V.A, and R.B.   More specifically, on or about June 16, 2006, defendant C. KALLAS falsely answered "No" in response to the question, "Were you self-employed or involved in any business enterprise in the past 15 months?" in a DOL Form EN1032 ("Form EN1032"), when in truth and in fact, as defendant C. KALLAS well knew, he was employed, self-employed, and involved in filing and causing to be filed with DOL and USCIS employment-based immigration forms and petitions.   These forms and petitions included ETA-9089 forms and Form I-140 petitions filed on behalf of the above-listed aliens between March 16, 2005, and June 16, 2006, and during the fifteen months preceding his submission of the Form EN1032 to DOL - Office of Workers' Compensation Programs.

//

//

77.   As a result of said falsification, concealment, and coverup, defendant C. KALLAS falsely obtained compensation and benefits in excess of $1,000.

### COUNT THIRTY-NINE

[18 U.S.C. § 1920]

[False Statement Or Fraud To Obtain Federal Employees' Compensation]

78.   Between on or about June 17, 2006, and on or about June 8, 2007, in San Bernardino County, within the Central District of California, and elsewhere, defendant C. KALLAS knowingly and willfully falsified, concealed, and covered up a material fact in connection with an application for and receipt of compensation and other benefit and payment under the Federal Employee's Compensation Act, in that defendant C. KALLAS failed to disclose to DOL - Office of Workers' Compensation Programs as required under federal law his work-related activities for alien clients, to include aliens A.M.R., B.G.P., C.C.C., E.G., F.G.G., F.O.C., H.D., J.L.A.T., M.C., R.B., and V.H. More specifically, on or about June 8, 2007, defendant C. KALLAS falsely answered "No" in response to the question, "Were you self-employed or involved in any business enterprise in the past 15 months?" in a DOL Form EN1032 ("Form EN1032"), when in truth and in fact, as defendant  C. KALLAS well knew, he was employed, self-employed, and involved in filing and causing to be filed with DOL and USCIS employment-based immigration forms and petitions.  These forms and petitions included ETA-9089 forms and Form I-140 petitions filed on behalf of the above-listed aliens between June 17, 2006, and June 8, 2007, and during the fifteen months preceding his submission of the Form EN1032 to DOL - Office of Workers' Compensation Programs.

//

//

79.   As a result of said falsification, concealment, and coverup, defendant C. KALLAS falsely obtained compensation and benefits in excess of $1,000.

## COUNT FORTY

### [18 U.S.C. § 1920]

[False Statement Or Fraud To Obtain Federal Employees' Compensation]

80.   Between on or about June 9, 2007, and on or about June 7, 2008, in San Bernardino County, within the Central District of California, and elsewhere, defendant C. KALLAS knowingly and willfully falsified, concealed, and covered up a material fact in connection with an application for and receipt of compensation and other benefit and payment under the Federal Employee's Compensation Act, in that defendant C. KALLAS failed to disclose to DOL - Office of Workers' Compensation Programs as required under federal law his work-related activities for alien clients, to include aliens A.M.R., F.G.G., and H.D.   More specifically, on or about June 7, 2008, defendant C. KALLAS falsely answered "No" in response to the question, "Were you self-employed or involved in any business enterprise in the past 15 months?" in a DOL Form EN1032 ("Form EN1032"), when in fact, as defendant C. KALLAS well knew, he was employed, self-employed, and involved in filing and causing to be filed with DOL and USCIS employment-based immigration forms and petitions.   These forms and petitions included ETA 9089 forms, and Form I-140 petitions filed on behalf of the above-listed aliens between June 9, 2007, and June 7, 2008, and during the fifteen months preceding his submission of the Form EN1032 to DOL - Office of Workers' Compensation Programs.

81.   As a result of said falsification, concealment, and coverup, defendant C. KALLAS falsely obtained compensation and benefits in excess of $1,000.

## COUNT FORTY-ONE

[18 U.S.C. § 1920]

[False Statement Or Fraud To Obtain Federal Employees' Compensation]

82.   On or about November 27, 2007, in San Bernardino County, within the Central District of California, and elsewhere, defendant C. KALLAS knowingly and willfully falsified, concealed, and covered up a material fact in connection with an application for and receipt of compensation and other benefit and payment under the Federal Employee's Compensation Act, while under oath during a DOL hearing regarding defendant C. KALLAS's workers' compensation claim.   More specifically, defendant C. KALLAS testified at the hearing that: (1) his wife, defendant M. KALLAS, was unemployed; and (2) the only source of income in defendants' household was from defendant C. KALLAS's monthly workers' compensation disbursement, when in truth and in fact, and as defendant C. KALLAS well knew, defendant M. KALLAS was employed and the workers' compensation disbursement was not the only source of income in defendants' household.

83.   As a result of said falsification, concealment, and coverup, defendant C. KALLAS falsely obtained compensation and benefits in excess of $1,000.

## COUNT FORTY-TWO

[18 U.S.C. § 1956(h)]

[Conspiracy To Commit Money Laundering]

I.   **OBJECT OF THE CONSPIRACY**

84.   Beginning on a date unknown, but at least from October 2003, and continuing through on or about June 26, 2008, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS, together with others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed with each other to conduct financial transactions knowing that property involved in a financial transaction represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is fraud and misuse of visas, permits, and other documents, in violation of Title 18, United States Code, Section 1546(a), and acceptance of a bribe by public official, in violation of Title 18, United States Code, Section 201(b)(2), knowing that the transactions were designed in whole and in part to conceal or disguise the nature, location, source, ownership, or control of said proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

II.   **MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED**

85.   Paragraphs 32 through 54 are incorporated herein by reference.

86.   Defendants would conceal the source, ownership, and control of the fees paid by the aliens by receiving cash from the aliens.

53

87.   Defendants also would conceal the source, ownership, and control of the fees paid by the aliens by depositing fees, and causing such fees to be deposited, into the following bank accounts that were not held in the names of the defendants:

   a.   Washington Mutual Bank account XXX-XXX467-2 in the name of M.I.F.S., defendant M. KALLAS's aunt.

   b.   Washington Mutual Bank account XXX-XXX785-0 in the name of A.F., defendant M. KALLAS's mother.

   c.   Washington Mutual Bank account XXX-XXX748-6 in the name of L.A., defendant M. KALLAS's grandmother.

88.   Defendants would use the funds deposited in the above referenced accounts to pay for their personal expenses.

## III.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish its object, defendants C. KALLAS and M. KALLAS, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California and elsewhere, on or about the dates listed below:

| OVERT ACT | DATE | ALIEN | OVERT ACT |
|---|---|---|---|
| 1 | 03/14/2005 | M.E.V.A. | Defendant M. KALLAS instructed alien M.E.V.A. to deposit money into Washington Mutual Bank account number XXX-XXX467-2, which was in the name of M.F.I.S., defendant M. KALLAS's aunt, as payment of fees for defendants to obtain employment-based immigration benefits for alien M.E.V.A. |

| OVERT ACT | DATE | ALIEN | OVERT ACT |
|---|---|---|---|
| 2 | August 2005 | R.B. | Defendant M. KALLAS instructed alien R.B. to mail a check payable to A.F., defendant M. KALLAS's mother, to defendants, as payment of fees for defendant C. KALLAS to obtain employment-based immigration benefits for alien R.B. |
| 3 | 09/29/2005 | N/A | Defendant C. KALLAS submitted two false "Gift Letters" with defendants' loan application for a $533,000 refinance loan from GMAC Mortgage Corporation. |
| 4 | May 2006 | R.B. | Defendant M. KALLAS instructed alien R.B. to deposit money into Washington Mutual Bank account number XXX-XXX748-6 in the name of L.A., defendant M. KALLAS's grandmother, as payment of fees for defendant C. KALLAS to obtain employment-based immigration benefits for alien R.B. |
| 5 | 10/19/2006 | M.C. | Defendant C. KALLAS sent an email to alien M.C. instructing alien M.C. to deposit funds into Washington Mutual Bank account number XXX-XXX748-6 in the name of L.A., defendant M. KALLAS's grandmother, as payment for defendant C. KALLAS to obtain employment-based immigration benefits for alien M.C. |
| 6 | 06/26/2008 | M.E.S. | Defendants C. KALLAS and M. KALLAS accepted a cash payment in the amount of $20,000 from alien M.E.S. to obtain employment-based immigration benefits, using C. KALLAS's position as an immigration official. |

## COUNTS FORTY-THREE THROUGH FORTY-FOUR

[18 U.S.C. § 1956(a)(1)(B)(i)]

[Money Laundering]

89.  On or about the following dates, in San Bernardino County, within the Central District of California, and elsewhere, defendant M. KALLAS, together with others known and unknown to the Grand Jury, knowing that the property involved in each of the financial transactions described below represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct the following financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, namely fraud and misuse of visas, permits, and other documents, in violation of Title 18, United States Code, Section 1546, and acceptance of a bribe by public official, in violation of Title 18, United States Code, Section 201(b)(2), knowing that each of the transactions was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE | DEFENDANT | FINANCIAL TRANSACTION |
|-------|------|-----------|----------------------|
| 43 | 9/1/2005 | M. KALLAS | Defendant M. KALLAS withdrew $45,836.34 in funds from Washington Mutual Bank account number XXX-XXX467-2, which account was in the name of M.I.F.S., defendant M. KALLAS's aunt. |
| 44 | 9/1/2005 | M. KALLAS | Defendant M. KALLAS deposited $45,836.34 in funds in Washington Mutual Bank account number XXX-XXX748-6, which account was in the name of L.A., defendant M. KALLAS's grandmother. |

## COUNTS FORTY-FIVE THROUGH FORTY-NINE

[18 U.S.C. § 1957]

[Money Laundering Involving Transactions Greater Than $10,000]

90.   On or about the following dates, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS, together with others known and unknown to the Grand Jury, knowing that the funds involved represented the proceeds of some form of unlawful activity, conducted and attempted to conduct the following monetary transactions in criminally-derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. § 1546, and acceptance of a bribe by public official, in violation of 18 U.S.C. § 201(b)(2):

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|--------------|----------------------|
| 45 | 12/16/2004 | M. KALLAS | Defendant M. KALLAS withdrew $98,048 in funds in the form of cashier's check number 884577766 from Washington Mutual Bank account number XXX-XXX467-2, which account was in the name of M.I.F.S., defendant M. KALLAS's aunt, which defendant M. KALLAS then used to pay down the mortgage balance during the mortgage refinance of her and defendant C. KALLAS's residence located in Alta Loma, California. |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|---|---|---|---|
| 46 | 2/17/2005 | C. KALLAS and M. KALLAS | Defendant C. KALLAS negotiated the purchase of a Ford F-250 pickup truck that defendant M. KALLAS purchased in her name by defendants making a $17,000 cash deposit payment to the Sunrise Ford dealership located in San Bernardino County, California. |
| 47 | 06/17/2005 | M. KALLAS | Defendant M. KALLAS used check number 162 in the amount of $22,562.73 from Washington Mutual Bank account number XXX-XXX467-2, which account was in the name of M.I.F.S., defendant M. KALLAS's aunt, to pay off defendant M. KALLAS's loan from Ford Credit for her Ford F-250 pickup truck. |
| 48 | 09/01/2005 | M. KALLAS | Defendant M. KALLAS withdrew funds in the amount of $45,837.34 from Washington Mutual Bank account number XXX-XXX467-2, which account was in the name of M.I.F.S., defendant M. KALLAS's aunt. |
| 49 | 09/01/2005 | M. KALLAS | Defendant M. KALLAS deposited funds in the amount of $45,837.34 into Washington Mutual Bank account XXX-XXX748-6, which account was in the name of L.A., defendant M. KALLAS's grandmother. |

## COUNT FIFTY

[26 U.S.C. § 7201; 18 U.S.C. §§ 2(a), 2(b)]

[Tax Evasion]

91.   Beginning on or about January 1, 2003, and continuing through on or about March 25, 2004, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS did willfully attempt to evade and defeat the assessment and payment of income tax due and owing by defendants C. KALLAS and M. KALLAS to the United States of America for the calendar year 2003, which additional tax due and owing was at least $30,000, by committing the following affirmative acts, among others, and took substantial steps in an attempt to conceal from all proper officers of the IRS the true and correct income of defendants C. KALLAS and M. KALLAS for the tax year 2003:

a.   filing and causing to be filed electronically with the IRS a false Form 1040, U.S. Individual Income Tax Return, for tax year 2003, in the names of C. KALLAS and M. KALLAS, married filing jointly, which falsely understated their income for said calendar year;

b.   opening and causing to be opened checking accounts in the names of different individuals, which bank accounts defendants C. KALLAS and M. KALLAS controlled;

c.   depositing and causing to be deposited at least $100,000 of currency or other monetary instruments into bank accounts that were not held in their names but rather in the names of different individuals, which bank accounts defendants C. KALLAS and M. KALLAS controlled; and

            d.    using funds from those nominee bank accounts to pay for the personal expenses of C. KALLAS and M. KALLAS, including that on or about October 23, 2003, defendant C. KALLAS used Washington Mutual Bank cashier's check number 295101908 in the amount of $161,560.31 as a down payment in the purchase of defendant C. KALLAS and M. KALLAS's residence located in Alta Loma, California.

## COUNT FIFTY-ONE

[26 U.S.C. § 7201; 18 U.S.C. §§ 2(a), 2(b)]

[Tax Evasion]

92.   Beginning on or about January 1, 2004, and continuing through April 3, 2005, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS did willfully attempt to evade and defeat the assessment and payment of income tax due and owing by defendants C. KALLAS and M. KALLAS to the United States of America for the calendar year 2004, which additional tax due and owing was at least $40,000, by committing the following affirmative acts, among others, and took substantial steps in an attempt to conceal from all proper officers of the IRS the true and correct income of defendants C. KALLAS and M. KALLAS for the tax year 2004:

a.   filing and causing to be filed electronically with the IRS a false Form 1040, U.S. Individual Income Tax Return, for tax year 2004, in the names of C. KALLAS and M. KALLAS, married filing jointly, which falsely understated their income for said calendar year;

b.   depositing and causing to be deposited at least $150,000 of currency or other monetary instruments into bank accounts that were not held in their names but rather in the names of different individuals, which bank accounts defendants C. KALLAS and M. KALLAS controlled; and

c.   using funds from those nominee bank accounts to pay for the personal expenses of C. KALLAS and M. KALLAS.

**COUNT FIFTY-TWO**

[26 U.S.C. § 7201; 18 U.S.C. §§ 2(a), 2(b)]

[Tax Evasion]

93.   Beginning on or about January 1, 2005, and continuing through March 30, 2006, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS did willfully attempt to evade and defeat the assessment and payment of income tax due and owing by defendants C. KALLAS and M. KALLAS to the United States of America for the calendar year 2005, which additional tax due and owing was at least $20,000, by committing the following affirmative acts, among others, and took substantial steps in an attempt to conceal from all proper officers of the IRS the true and correct income of defendants C. KALLAS and M. KALLAS for the tax year 2005:

a.   filing and causing to be filed electronically with the IRS a false Form 1040, U.S. Individual Income Tax Return, for tax year 2005, in the names of C. KALLAS and M. KALLAS, married filing jointly, which falsely understated their income for said calendar year;

b.   depositing and causing to be deposited at least $100,000 of currency or other monetary instruments into bank accounts that were not held in their names but rather in the names of different individuals, which bank accounts defendants C. KALLAS and M. KALLAS controlled; and

c.   using funds from those nominee bank accounts to pay for the personal expenses of C. KALLAS and M. KALLAS.

## COUNT FIFTY-THREE

[26 U.S.C. § 7201; 18 U.S.C. §§ 2(a), 2(b)]

[Tax Evasion]

94.   Beginning on or about January 1, 2006, to on or about March 4, 2007, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS did willfully attempt to evade and defeat the assessment and payment of income tax due and owing by defendants C. KALLAS and M. KALLAS to the United States of America for the calendar year 2006, by committing the following affirmative acts, among others, and took substantial steps in an attempt to conceal from all proper officers of the IRS the true and correct income of defendants C. KALLAS and M. KALLAS for the tax year 2006:

a.   filing and causing to be filed electronically with the IRS a false Form 1040, U.S. Individual Income Tax Return, for tax year 2006, in the names of C. KALLAS and M. KALLAS, married filing jointly, which falsely understated their income for said calendar year;

b.   depositing and causing to be deposited at least $50,000 of currency or other monetary instruments into bank accounts that were not held in their names but rather in the names of different individuals, which bank accounts defendants C. KALLAS and M. KALLAS controlled; and

c.   using funds from those nominee bank accounts to pay for the personal expenses of C. KALLAS and M. KALLAS.

## COUNT FIFTY-FOUR

[26 U.S.C. § 7201; 18 U.S.C. §§ 2(a), 2(b)]

[Tax Evasion]

95.   Beginning on or about From January 1, 2007, and continuing through March 6, 2008, in San Bernardino County, within the Central District of California, and elsewhere, defendants C. KALLAS and M. KALLAS did willfully attempt to evade and defeat the assessment and payment of the income tax due and owing by defendants C. KALLAS and M. KALLAS to the United States of America for the calendar year 2007, by committing the following affirmative acts, among others, and took substantial steps in an attempt to conceal from all proper officers of the IRS the true and correct income of defendants C. KALLAS and M. KALLAS for the tax year 2007:

a.   filing and causing to be filed electronically with the IRS a false Form 1040, U.S. Individual Income Tax Return, for tax year 2007, in the names of C. KALLAS and M. KALLAS, married filing jointly, which falsely understated their income for said calendar year;

b.   depositing and causing to be deposited at least $50,000 of currency or other monetary instruments into bank accounts that were not held in their names but rather in the names of different individuals, which bank accounts defendants C. KALLAS and M. KALLAS controlled; and

c.   using funds from those nominee bank accounts to pay for the personal expenses of C. KALLAS and M. KALLAS.

## COUNT FIFTY-FIVE

[18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853]

[Asset Forfeiture]

96.   Pursuant to Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); and Title 21, United States Code, Section 853, each of defendants C. KALLAS and M. KALLAS convicted under any of Counts One through Seven and Counts Ten through Eighteen of this Second Superseding Indictment shall forfeit to the United States the following property:

a.   All right, title and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. §§ 201 or 1546 (or to a conspiracy to violate either or both offenses); and

b.   A sum of money equal to the total amount of money obtained as a result of each such offense.

97.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), C. KALLAS and M. KALLAS, if so convicted, shall each forfeit substitute property, up to the value of the amount described in the preceding paragraph, if, by any act or omission of that defendant, the property described therein, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

## COUNT FIFTY-SIX

[18 U.S.C. § 982(a)(1)]

[Asset Forfeiture]

98.   Pursuant to Title 18, United States Code, Section 982(a)(1), defendants C. KALLAS and M. KALLAS shall forfeit to the United States the following:

a.   All right, title, and interest in any and all property involved in the offense(s) in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1957 described in Counts Forty-Two through Forty-Nine, and all property traceable to such property, including the following:

i.   all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(h), and 1957;

ii.   all commissions, fees and other property constituting proceeds obtained as a result of those violations; and

iii. all property used in any manner or part to commit or to facilitate the commission of those violations.

b.   A sum of money equal to the total value of the property described in paragraph 98(a) above.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

99.   Pursuant to Title 21, United States Code, Section 853(p), and Title 18, United States Code, Section 982(b), each of defendants C. KALLAS and M. KALLAS, if so convicted, shall forfeit substitute property, up to the total value of the property described in paragraph

66

98, if, by any act or omission of the defendants, the property described in paragraph 98, or any portion thereof, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; © has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/

_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

*Christine C. Ewell*

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

WESLEY L. HSU
Assistant United States Attorney
Chief, Cyber & Intellectual Property Crimes

MARK KRAUSE
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes

RAYMOND O. AGHAIAN
Assistant United States Attorney
Cyber & Intellectual Property Crimes

CHARLES E. PELL
Assistant United States Attorney
General Crimes